### State v. Gillard
[Cite as 4 AOA 149]

Case No. CA-6701
Stark County, (5th)
Decided June 25, 1990

Robert D. Horowitz, Prosecuting Attorney, Richard D. Reinbold, R. Mark Caldwell, Asst. Prosecuting Attorneys, P. O. Box 20049, Canton, OH 44701, for Plaintiff-Appellant.

John N. Mackey, Kathleen O. Tatarsky, Attorneys at Law, Bliss Tower, Suite 610, Canton, OH 44702, For Defendant-Appellee.

QUILLIN, P. J.

This case is before this court on remand from the Ohio Supreme Court (*State v. Gillard* (1988), 40 Ohio St. 3d 226) to independently review the appropriateness and proportionality of the imposed death penalty.

On December 31, 1984, Timothy Hendricks invited several guests to his home at 213 Kennet Court, N.W. in Canton, Ohio, for a New Year's Eve party. Sometime during the party, guests William Gillard, brother of the defendant-appellant John Gillard, and Leroy Ensign engaged in a fight. After Hendricks subsequently separated the two, William Gillard, superficially bloodied, left the party.

The party ended between 3:00 a.m. and 4:00 a.m. on January 1, 1985. Seven guests stayed the night, including Ensign, Ronnie Postlethwaite and Denise Maxwell. Hendricks retired to his first floor bedroom with his girlfriend, while Ensign slept in a chair in the first floor kitchen. Postlethwaite and Maxwell slept on a couch in the first floor living room. Three other guests slept in rooms on the second floor.

Postlethwaite was awakened by a gunshot and went to look out the back door. Postlethwaite observed William Gillard fire a second shot into the air from a handgun. Postlethwaite tried unsuccessfully to wake Ensign. Postlethwaite then went back to the couch to lied down.

The next thing Postlethwaite recalled was hearing the back door slammed open. He heard heavy steps "like horses trampling" and then a shot was fired. Someone grabbed Postlethwaite's hair and pulled his head back. The assailant placed a gun to Postlethwate's temple, shot him, and threw him to the floor. Postlethwaite watched as the gunman shot Maxwell in the head, killing Maxwell. Postlethwaite recognized the gunman as defendant-appellant, John Gillard.

A neighbor, Larry Beck, heard two gunshots between 3:00 a.m. and 3:30 a.m. At 4:15 a.m. Beck heard at least two people going towards Hendrick's home. A few minutes later, Beck heard more gunfire and two men running away from Hendrick's home.

Canton police subsequently arrived at 213 Kennet Court at approximately 4:50 a.m. Officers discovered the body of Maxwell on the couch and the fatally injured Ensign near the front entrance. Paramedics were working on Postlethwaite when Canton police officer, Sheldon Godshall, asked Postlethwaite who had shot him. Postlethwaite said "Dirty John". Godshell asked, "Dirty John, who"? Postlewaite replied, "Dirty John Gillard."

On January 4, 1985, John Gillard arrived at the home of Ronald Webb in Wellsburg, West

Virginia. Gillard asked to see Donald Gorby who lived in the upstairs apartment of the two family home also occupied by the Webb family. Gorby was present in Webb's home at the time and introduced Gillard as "Butch Johnson". After approximately twenty minutes, Gillard asked Mrs. Webb to cut Gillard's hair. Mrs. Webb complied with the request.

Sometime later, Milton smith arrived at the Webb apartment. Smith looked in and stated, "Jesus Christ, I didn't recognize you without the beard, Dirty John."

The others subsequently left Webb alone with Gillard, and Webb stated that he had "read in the paper where his brother was in jail for shooting some people in Canton." Gillard stated, "I pulled the trigger, my brother is taking the fall."

Later the same day, Webb, Gorby and Gillard had a dispute concerning Webb's wife. Webb stated that he was "going to the law." Gillard stated, "I got to get out of here." Webb carried through on his threat and reported Gillard's presence to the Brooke County, West Virginia, sheriff's office. Gillard was subsequently arrested and identified himself to the arresting authorities as "Butch Johnson."

John Gillard was indicted for the aggravated murders of Maxwell and Ensign, and for the attempted aggravated murder of Postlethwaite. In each of these three cases, two counts were returned: one charging that the offense was committed with prior calculation and design, R.C. 2903.01(A), and one charging felony murder, R.C. 2903.01(B). Each aggravated murder count had two death specifications. The first charging a course of conduct involving a purposeful killing or attempt to kill two or more people, R.C. 2929.04(A)(5). The other charging murder coupled with aggravated burglary, R.C. 2929.04(A)(7). Gillard was also charged with aggravated burglary, R.C. 2911.11.

At trial, John Gillard put forth an alibi defense that he was at a New Year's Eve party with his friend Jerri Oney from 10:30 p.m., December 31, 1984, until 4:30 a.m., January 1, 1985. Gillard then stated that he left the party with Oney and spent the rest of the night with Oney at her home. Oney and the hosts of the party, Tracy and Melissa Price corroborated Gillard's alibi. Gillard also claimed that he never told anyone his name was "Butch Johnson", and also denied having Mrs. Webb cut his hair.

John Gillard was convicted upon all counts and specifications. The jury recommended that Gillard be sentenced to death. The trial judge followed the recommendation and sentenced Gillard to death.

The Stark County Court of Appeals reversed the convictions on the claims of error and remanded the case to the trial court, without undertaking an independent review of the appropriateness and proportionality of the death penalty. The Ohio Supreme Court reversed the Court of Appeals and remanded the case to the Court of Appeals to perform the statutory independent review.

R.C. 2929.05(A) mandates that the court of appeals independently weigh all the facts and evidence in the record to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case.

Gillard was convicted of two aggravating specifications. The offenses were part of a course of conduct involving the purposeful killing or attempted killing of two or more persons, R.C. 2929.05(A)(5); and the offenses were committed in conjunction with the commission of an aggravated burglary, R.C. 2929.04(A)(7).

During the penalty phase of Gillard's trial, Gillard presented only one mitigating factor, pursuant to R.C. 2929.04(B)(7), for the consideration of the jury and trial judge. Gillard set forth that he was innocent of the offenses. Gillard expounded that even though the jury had found him guilty, the jury should not compound their mistake by recommending death. "Residual doubts" of a capital defendant's guilt are properly considered in mitigation. *State* v. *Gillard* (1988), 40 Ohio St. 3d 226, 234-35.

After a thorough review of the record, we hold that all offenses and specifications were proved beyond a reasonable doubt. Therefore, Gillard's claim of innocence holds little weight in comparison to the aggravating circumstances of which Gillard was convicted.

Further, Gillard asserts that the ineffectiveness of his trial counsel was a mitigating factor, as Gillard's counsel failed to set forth evidence of other mitigating factors during the penalty phase of trial. Nevertheless, the Ohio Supreme Court has already determined that there was no deficiency in Gillard's counsel's performance. *Gillard, supra*, at 235.

Having found that the aggravating circumstances outweigh any mitigating factors, we must now determined whether Gillard's sentence of death is excessive or disproportionate to the penalties imposed in similar cases. R.C.

2929.05(A). We need only consider those cases from within the Fifth Appellate District where the death penalty was imposed. *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, paragraph one of the syllabus.

The Fifth District Court of Appeals has previously reviewed five cases where the death penalty has been imposed. The court has found the death penalty appropriate in four of the cases involving a felony murder. *State* v. *Sneed* (May 22, 1989), Stark App. No. 6976, unreported (Rape and Aggravated murder); *State* v. *Stumpf* (May 22, 1986), Guernsey App. No. 760, 763, unreported (Robbery and Aggravated murder); *State* v. *Thompson* (June 17, 1985) Licking App. No. 2997, unreported (Robbery and Aggravated Murder); *State* v. *Maurer* (Feb. 13, 1984) Stark App. No. 6166, unreported (Kidnapping and Aggravated murder).

In *State* v. *Glenn* (Feb. 19, 1987), Guernsey App. No. 798, unreported, the Fifth District Court of Appeals vacated the death sentence in a case involving an aggravated murder with two death specifications. The first specification was that the killing was part of the course of conduct involving the purposeful killing or attempt to kill two or more persons. The second specification was the purposeful killing of a peace officer engaged in his duties. The court found the death sentence inappropriate due to the diminished capacity of the accused, because the accused suffered from paranoid schizophrenia.

In the case *sub judice*, the killing was committed in conjunction with a felony, and as part of the course of conduct involving the purposeful killing or attempt to kill two or more persons. There is no evidence of Gillard exhibiting any substantially impaired or diminished capacity. After comparing the above cases, we hold that the sentence of death is neither excessive nor disproportionate.

Gillard asserts further that substantial errors occuring during the course of the trial proceedings render the sentence of death inappropriate. The Ohio Supreme Court has already ruled that any errors during trial were not prejudicial to Gillard. See *Gillard, supra*. We hold that the death sentence is appropriate beyond a reasonable doubt.

The conviction and sentence of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, J., and CACIOPPO, J., concur.